IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| PAUL BLAHNIK and ADDISON POPPAS, individually and for all others similarly situated, | ) ) ) **Case No. 1:15-CV-4735** |
| Plaintiffs, | ) ) **Hon. John Z. Lee** |
| v. | ) ) **Magistrate Judge Maria Valdez** |
| BOX OFFICE TICKET SALES, LLC, TICKETS IN TIME, LLC, JOHN UHRICH and HOWARD SCHWARTZ, | ) ) ) ) |
| Defendants. | ) ) |

**DEFENDANTS' MEMORANDUM BRIEF IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**

Prepared and Submitted by:

Aaron A. Clark, #20045
McGrath North Mullin & Kratz, PC LLO
First National Tower, Suite 3700
1601 Dodge Street
Omaha, NE 68102
Phone: 402-341-3070
Fax: 402-341-0216
aclark@mcgrathnorth.com

    -and-

Carol Poplawski (#6192132)
Daniel O. Canales (#6296027)
Ogletree, Deakins, Nash, Smoak &
  Stewart, P.C.
155 N. Wacker Dr., Suite 4300
Chicago, IL 60606
Phone: 312-558-1220
Fax: 312-807-3619

ATTORNEYS FOR DEFENDANT

**INTRODUCTION**

Plaintiffs, Paul Blahnik ("Blahnik"), Addison Poppas ("Poppas") and Julius Mosansky ("Mosansky") (collectively the "Plaintiffs") are pursuing this action against Defendants Box Office Ticket Sales, LLC, Tickets in Time, LLC, John Uhrich, and Howard Schwartz (collectively the "Defendants") alleging that they are owed overtime for work they performed as ticket sales representatives.[1] Defendants submit that partial summary judgment should be granted in favor of the Defendants because all of the overtime claims asserted on behalf of Plaintiffs Blahnik and Mosansky are barred by the "Commission Salespersons" exemption under the Fair Labor Standards Act, 29 U.S.C. § 207(i). In addition, the overtime claims of Plaintiff Poppas for the year 2013 are also barred by the exemption. Accordingly, these claims should be dismissed as a matter of law.

**STANDARD OF REVIEW**

"Summary judgment is properly regarded, not as a disfavored procedural shortcut, but rather, as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action'." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). To withstand a motion for summary judgment, the non-moving party must substantiate the allegations with more than speculation. "Speculation is insufficient to withstand summary judgment; the nonmoving party 'must do more than simply show there is some metaphysical doubt as to the material facts.'" *Ortiz v. John O. Butler Co.*, 94 F.3d 1121, 1127 (7th Cir. 1996) (quoting Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986)). Essentially the test is "whether the evidence presents a

---

[1]/ Plaintiffs Blahnik and Poppas initially brought this action individually and on behalf of all other similarly-situated employees. Plaintiffs' Motion to Conditionally Certify a Collective Action was granted by the Court on October 7, 2015. (Doc. No. 34). With the exception of Julius Mosansky, no other claimants have joined these proceedings prior to the closing of the opt-in period. (Doc. No. 35).

sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). According to the U.S. Supreme Court:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against the party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp.*, 477 U.S. at 322-23.

"Rule 56(e) provides that, when a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson*, 477 U.S. at 250. "Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324.

## ARGUMENT

During their employment, all of the Plaintiffs qualified for the "Commissioned Salespersons" exemption under the Fair Labor Standards Act. 29 U.S.C. § 207(i) (hereinafter "Section 7(i)"). The Section 7(i) exemption bars all of the overtime claims asserted on behalf of Plaintiffs Blahnik and Mosansky. In addition, it bars all overtime claims pursued by Plaintiff Poppas during the 2013 calendar year. Section 7(i) provides an overtime exemption if the following three conditions are met: (1) the employee must be employed by a retail or service establishment; (2) the employee's regular rate of pay must exceed one and one-half times the

3

applicable minimum wage for every hour worked in a workweek in which overtime hours are worked; and (3) more than half of the employee's total earnings in a representative period must consist of commissions. 29 U.S.C. § 207(i).

## I.  DEFENDANTS' BUSINESS QUALIFIES AS A RETAIL ESTABLISHMENT.

The first requirement for the Section 7(i) exemption is that the employee be employed by a retail or service establishment. This requirement is clearly met here. At all times, Defendants operated an online ticket sales business which sold tickets to the general public for events including concerts, sporting events, and theater shows across the United States and Canada. The regulations provide the following description of a retail or service establishment:

> Typically, a retail or service establishment is one which sells goods or services to the general public. It serves the everyday needs of the community in which it is located. The retail or service establishment performs a function in the business organization of the Nation which is at the very end of the stream of distribution, disposing in small quantities of the products and skills of such organization and does not take part in the manufacturing process.

29 C.F.R. § 779.318.

The business of the Defendants has always been devoted to selling tickets directly to the general public. (Ex. 1, Schwartz Decl., ¶ 5). The tickets are not sold for resale purposes. (*Id.*). The business serves the everyday needs of the community by providing tickets for events including concerts, sporting events, and theater shows to the general public. (*Id.*). All of the profits of the business (100%) are derived from sales to consumers (i.e., the general public). (*Id.*). *See* 29 C.F.R. § 779.312 (defining a retail or service establishment as "an establishment 75 per centum of whose dollar volume of sales of goods or services (or of both) is not for resale and is recognized as retail sales or services in the particular industry."). Clearly, the business of Defendants qualifies as a "retail" establishment for purposes of the Section 7(i) exemption. *See Alvarado v. Corp. Cleaning Servs., Inc.*, 782 F.3d 365 (7th Cir. 2015).

## II. THE EMPLOYEES' REGULAR RATES OF PAY EXCEEDED ONE AND ONE-HALF TIMES THE APPLICABLE MINIMUM WAGE FOR EVERY HOUR WORKED IN A WORKWEEK IN WHICH OVERTIME HOURS WERE WORKED.

The Section 7(i) exemption also requires that an employee's regular rate of pay must exceed one and one-half times the applicable minimum wage for every hour worked in a workweek in which overtime hours are worked. 29 U.S.C. § 207(i). The regulations define how the regular rate of pay should be determined when someone is paid a bi-weekly salary and deferred commissions. 29 C.F.R. §§ 778.113 and 778.120. A bi-weekly salary is converted to the workweek equivalent for purposes of determining the regular rate of pay. 29 C.F.R. § 778.113(b). Furthermore, deferred commissions are allocated over the time period in which they are earned. When commissions are calculated on a monthly basis, "the employer should multiple the commission payment by 12 and divide by 52 to get the amount of commission allocable to a single week." 29 C.F.R. § 778.120(a)(1). This methodology was utilized by Defendants for purposes of this Motion. (Ex. 1, Schwartz Decl., ¶ 18).

### a. Paul Blahnik

Paul Blahnik worked for the Company from July 2013 to January 2015. During his time with the Company, Blahnik received a salary of $1,346.15 biweekly in addition to his commissions. Even assuming he worked 65 hours every week,[2] his regular rate of pay was well above one and one-half times the applicable minimum wage. (Ex. 1, Schwartz Decl., ¶ 20) (Ex. 8). Blahnik's regular rate of pay was at or between $16.28 per hour and $36.44 per hour even if he worked 65 hours during every week of his employment. (Ex. 8). The applicable minimum

---

[2] Plaintiffs did not work in excess of 60 hours during their employment. Rather, they were scheduled to work a 45-hour workweek and were allowed to take breaks throughout the day equivalent to 18% of their total working time. (Ex. 1, Schwartz Decl., ¶ 11). Plaintiffs did not typically work in excess of 40 hours when break time is accounted for. (*Id.*). However, for purposes of this Motion, Defendants used a 65-hour workweek to calculate the hourly rate of pay. This far exceeds the amount of hours Plaintiffs claimed to have worked. (Exs. 5, 6, 7).

5

wage in Illinois is currently $8.25 per hour. 820 ILCS 105/4. One and one-half times the minimum wage is $12.38 per hour. Blahnik's regular rate was far above that amount.

### b. Addison Poppas

Addison Poppas worked for the Company from February 2013 through June 2014, and again from November 2014 to April 2015. During 2013, Poppas received a bi-weekly salary of $1,346.15 in addition to his commissions. Even assuming Poppas worked 65-hour workweeks, his regular rate of pay for 2013 was above one and one-half times the applicable minimum wage. His rate of pay was at or between $12.57 and $26.49 assuming a 65-hour workweek. (Ex. 1, Schwartz Decl., ¶ 21) (Ex. 9). These amounts are above one and one-half times the applicable minimum wage ($12.38 per hour).

### c. Julius Mosansky

Julius Mosansky worked for the Company from October 2012 through July 2013, and again from March 2014 through December 2015. During his employment, Mosansky received a salary of $1,346.15 bi-weekly in addition to his commissions. Mosansky has stated under oath that he worked "as many as 46-48 hours per week." (Ex. 7). Mosansky's base salary alone provided sufficient compensation to pay him at a rate in excess of $14.00 per hour even if he worked 48 hours every week of his employment. (Ex. 1, Schwartz Decl., ¶ 17). This amount is more than one and one-half times the minimum wage applicable in the State of Illinois ($12.38 per hour). (*Id.*). When you consider commissions as part of Mosansky's compensation, his hourly rate is significantly higher. Clearly, Mosansky was earning well above one and one-half times the applicable minimum wage for any workweeks in which he may have worked overtime.

### III. MORE THAN HALF OF THE EMPLOYEES' TOTAL EARNINGS IN EACH CALENDAR YEAR CONSISTED OF COMMISSIONS.

The representative period for determining if enough commissions have been paid to qualify for the exemption may be anywhere from a month to one year. 29 C.F.R. § 779.417. Defendants utilized a calendar year for purposes of determining whether more than half of each employee's total earnings consist of commissions to satisfy the Section 7(i) exemption.

#### a. Paul Blahnik

In all calendar years Blahnik worked for the Company more than half of his total earnings consisted of commissions. During the six months Blahnik was with the Company in 2013, he earned a total of $36,049.02, which consisted of $16,203.80 in salary, bonuses, and other benefits and $19,845.22 in commissions. (Ex. 1, Schwartz Decl., ¶ 23). Thus, his commissions amounted to 55.05% of his total compensation in 2013. (*Id.*). In 2014, Blahnik earned a total of $96,550.58, which consisted of $35,268.13 in salary bonuses, and other benefits and $61,282.45 in commissions. (*Id.*). Thus, his commissions amounted to 63.47% of his total compensation in 2014. (*Id.*). During the brief time he worked for the Company in 2015, Blahnik earned a total of $7,293.49, which consisted of $2,692.30 in salary, bonuses, and other benefits and $4,601.19 in commissions. (*Id.*). Thus, his commissions amounted to 63.09% of his total compensation in 2015. (*Id.*). As a result, Blahnik clearly meets the third and final requirement that more than half of his total earnings in a representative period consist of commissions.

#### b. Addison Poppas

In the calendar year 2013, more than half of Poppas' total earnings consisted of commissions. During the time Poppas worked for the Company in 2013, he earned a total of $61,806.71, which included $30,350.37 in salary, bonuses, and other benefits and $31,456.34 in commissions. (*Id.* at ¶ 24). Thus, his commissions amounted to 50.89% of his total

7

compensation in 2013. (*Id.*). As a result, Poppas meets the third requirement of Section 207(i) because more than half of his total earnings in the representative period consist of commissions.

### c. Julius Mosansky

In all calendar years Mosansky worked for the Company, more than half of his total earnings also consisted of commissions. During the time he worked for the Company in 2012, he earned $13,220.85, which consisted of $5,519.20 in salary, bonuses, and other benefits and $7,701.65 in commissions. (*Id.* at ¶ 25). Thus, his commissions amounted to 58.25% of his total compensation in 2012. (*Id.*). For the time Mosansky worked for the Company in 2013, he earned $38,155.69, which consisted of $9,461.54 in salary, bonuses, and other benefits, and $28,694.15 in commissions. (*Id.*). Thus, his commissions were 75.20% of his total compensation in 2013. (*Id.*). During his time worked for the Company in 2014, Mosansky earned a total of $57,228.02, which consisted of $24,769.17 in salary, bonuses, and other benefits and $32,458.85 in commissions. (*Id.*). Thus, his total compensation was 56.72% commissions in 2014. (*Id.*). As a result, there is no question that Mosansky meets the third and final requirement that more than half of his total earnings in a representative period consist of commissions.

## CONCLUSION

Based on the foregoing, Defendants respectfully request the Court to grant partial summary judgment in their favor dismissing all of the claims of Paul Blahnik and Julius Mosansky and dismissing the claims of the Plaintiff Addison Poppas for the 2013 calendar year. All of these claims are barred by the Section 7(i) exemption.

Dated this 13th day of May 2016.

|  |  |
|---|---|
|  | BOX OFFICE TICKET SALES, LLC, TICKETS IN TIME, LLC, JOHN UHRICH AND HOWARD SCHWARTZ, Plaintiffs |
| By: | /s/ Aaron A. Clark |
|  | Aaron A. Clark, #20045 |
|  | McGrath North Mullin & Kratz, PC LLO |
|  | First National Tower, Suite 3700 |
|  | 1601 Dodge Street |
|  | Omaha, NE 68102 |
|  | Phone: 402-341-3070 |
|  | Fax: 402-341-0216 |
|  | aclark@mcgrathnorth.com |
|  | -and- |
|  | Carol Poplawski (#6192132) |
|  | Daniel O. Canales (#6296027) |
|  | Ogletree, Deakins, Nash, Smoak & Stewart, P.C. |
|  | 155 N. Wacker Dr., Suite 4300 |
|  | Chicago, IL 60606 |
|  | Phone: 312-558-1220 |
|  | Fax: 312-807-3619 |
|  | ATTORNEYS FOR DEFENDANT |

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the 13th day of May 2016, the above and foregoing **Defendants' Memorandum Brief in Support of Motion for Partial Summary Judgment** was filed electronically with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to the following:

James B. Zouras (*jzouras@stephanzouras.com*)
Ryan F. Stephan (*rstphan@stephanzouras.com*)
Jorge Gamboa (*jgamboa@stephanzouras.com*)
Stephan Zouras, LLP
205 N. Michigan Ave., Suite 2560
Chicago, IL 60601

                                                                           /s/ Aaron A. Clark
                                                                            Aaron A. Clark