**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **PAUL BLAHNIK and ADDISON POPPAS, individually and for all others similarly situated,** | ) ) ) ) | |
| **Plaintiffs,** | ) ) | **15 C 4735** |
| **v.** | ) ) | **Judge John Z. Lee** |
| **BOX OFFICE TICKET SALES, LLC, TICKETS IN TIME, LLC, JOHN URICH, and HOWARD SCHWARTZ,** | ) ) ) ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Paul Blahnik ("Blahnik") and Addison Poppas ("Poppas") (together, "Plaintiffs") brought a class action suit against Defendants Box Office Ticket Sales, LLC, Tickets in Time, LLC, John Urich, and Howard Schwartz ("Defendants"). They claim that Defendants failed to pay them overtime as required by the Fair Labor Standards Act (FLSA), 29 U.S.C. § 207 *et seq.* One individual—Julius Mosansky ("Mosansky")—opted in to Plaintiffs' class. Defendants have now moved for partial summary judgment, arguing they should be exempt from the FLSA's overtime pay requirements except in relation to Poppas's employment from 2014 through 2015. For the reasons that follow, Defendants' motion [40] is granted.

## Background[1]

Box Office Ticket Sales ("BOTS") is the trade name for an online ticket broker that at all relevant times sold event tickets to consumers. Defs.' LR 56.1(a)(3) Stmt. ¶ 4, ECF No. 41. Among BOTS's offerings were tickets to concerts, sporting events, and the theater. *Id.*; Pls.' LR 56.1(b)(3)(C) Stmt. ¶ 2, ECF No. 48.[2] When customers called seeking tickets, BOTS's sales representatives searched sites like Ticketmaster and StubHub for tickets to the requested events, purchased them using a company card, and then charged and sent them to the customers. Pls.' LR 56.1(b)(3)(C) Stmt. ¶¶ 22–24. Blahnik, Poppas, and Mosansky each worked for BOTS as sales representatives. *Id.* ¶¶ 1–2. Blahnik worked for BOTS from July 2013 through July 2015, Poppas from February 2013 through June 2014 and again from November 2014 through April 2015, and Mosansky from October 2012 through July 2013 and again from March 2014 through December 2014. Defs.' LR 56.1(a)(3) Stmt. ¶¶ 6–8.

During their employment at BOTS, Plaintiffs regularly worked 45 hours per week, Pls.' LR 56.1(b)(3)(C) Stmt. ¶¶ 16–17, although they in some instances worked more, Defs.' LR 56.1(a)(3) Stmt. ¶¶ 10–12. They were compensated by a base salary of $35,000, bonuses, and commissions based on ticket sales they made.

---

[1]     The following facts are undisputed except where noted.

[2]     Defendants did not respond to Plaintiffs' statement of additional facts under Local Rule 56.1. Pursuant to that rule, "[a]ll material facts set forth in the [non-moving party's] statement filed pursuant to section (b)(3)(C) will be deemed admitted unless controverted by the statement of the moving party." LR 56.1(a). Thus, all of Plaintiffs' additional facts are deemed admitted for the purposes of this motion. *Jang v. Woo Lae Oak, Inc. Chi.*, No. 12-CV-00782, 2013 WL 6577027, at *2 n.1 (N.D. Ill. Dec. 12, 2013).

*Id.* ¶ 9; Pls.' LR 56.1(b)(3)(C) Stmt. ¶ 13. They were not paid overtime. Pls.' LR 56.1(b)(3)(C) Stmt. ¶ 14.

Their hourly rate of compensation and percentage of compensation based on commissions are relevant to their claims in this case. During Blahnik's period of employment, his base salary provided him a rate of compensation of at least $16.28 per hour. Defs.' LR 56.1(a)(3) Stmt. ¶ 14. Additionally, commissions comprised at least 55.05% of his total compensation during the years he worked for BOTS. *Id.* ¶ 16. Poppas's base salary provided him a rate of compensation of at least $12.57 per hour during his employment in 2013. *Id.* ¶ 15. During that year, commissions comprised 50.89% of his total compensation. *Id.* ¶ 17. Mosansky's base salary provided him a rate of compensation of more than $14.00 per hour. *Id.* ¶ 13. Commissions comprised at least 56.72% of his total compensation during his years at BOTS. *Id.* ¶ 18.

Plaintiffs state that, while working at BOTS, Defendant John Uhrich—BOTS's CEO—"created a companywide policy of refusing to sell tickets to African American callers." Pls.' LR 56.1(b)(3)(C) Stmt. ¶¶ 16, 26.[3] Uhrich initially instructed Plaintiffs to "hang up the phone whenever a person sounded African American or had an African-American name, especially if that person requested

---

[3] It bears repeating that Defendants did not respond to the facts in this paragraph as required by Local Rule 56.1, and they are therefore admitted for the purposes of this motion. Additionally, contrary to Defendants' suggestion, Plaintiffs' evidence in support of these facts is not hearsay. Defs.' Reply 8, ECF No. 54. Plaintiffs rely on Uhrich's out-of-court statements in their affidavits, but Uhrich's statements are admissions by a party opponent and thus are not hearsay. Fed. R. Evid. 801(d)(2).

tickets to an event with a predominantly African-American audience (*e.g.*, rap concerts and NBA games)." Pls.' LR 56.1(b)(3)(C) Stmt. ¶ 27. Later, "due to African-Americans calling back after being hung up on," Uhrich instructed Plaintiffs to "quote African-American callers ticket prices so highly-inflated that no reasonable person would purchase a ticket." *Id.* ¶ 28.

## **Legal Standard**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To survive summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and instead must "establish some genuine issue for trial such that a reasonable jury could return a verdict in her favor." *Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 772–73 (7th Cir. 2012). In reviewing a motion for summary judgment, the Court gives the nonmoving party "the benefit of conflicts in the evidence and reasonable inferences that could be drawn from it." *Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 794 (7th Cir. 2013). The Court must not make credibility determinations or weigh conflicting evidence. *McCann v. Iroquois Mem'l Hosp.*, 622 F.3d 745, 752 (7th Cir. 2010).

## **Analysis**

Defendants have moved for partial summary judgment as to Plaintiffs' FLSA overtime claims based on the "Commission Salespersons" exemption found in 29

U.S.C. § 207(i).  Defs.' Mem. Supp. Summ. J. 2, ECF No. 42.  Under this provision, employers are exempt from the FLSA's overtime pay requirements as to certain employees where three conditions are met: (1) the employer must operate (and the employee must work at) a "retail or service establishment"; (2) the regular rate of pay for such an employee must exceed one and one-half times the applicable minimum hourly rate; and (3) more than half of the employee's compensation for a representative period of at least one month must come from commissions on good or services.  29 U.S.C § 207(i); *see Alvarado v. Corp. Cleaning Servs., Inc.*, 782 F.3d 365, 366 (7th Cir. 2015).

In moving for summary judgment, it is Defendants' burden to establish that the § 207(i) exemption applies.  *Laouini v. CLM Freight Lines, Inc.*, 586 F.3d 473, 475 (7th Cir. 2009) (explaining that a defendant moving for summary judgment on the basis of an affirmative defense carries the burden of establishing the defense).  Here, there are no genuine disputes of material fact, and in any case, whether the exemption applies is a question of law for the Court to decide.  *See Roe-Midgett v. CC Servs., Inc.*, 512 F.3d 865, 869 (7th Cir. 2008) (citing *Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 714 (1986)) ("Determining the duties encompassed by an employee's position is a question of fact; determining the appropriate FLSA classification is a question of law."); *see also Bitner v. Wyndham Vacation Resorts, Inc.*, No. 13-CV-451-WMC, 2016 WL 7480428, at *17 (W.D. Wis. Dec. 29, 2016) (stating that whether a defendant is a retail or service establishment under § 207(i) is a question of law).  Moreover, the Seventh Circuit has stated that the § 207(i)

exemption is to be construed against an employer trying to assert it, but only as a tie-breaker in a close case. *Mechmet v. Four Seasons Hotels, Ltd.*, 825 F.2d 1173, 1177–78 (7th Cir. 1987).

Defendants start by arguing that the second and third conditions for the § 207(i) exemption are satisfied. According to their calculations, Plaintiffs each received a regular rate of pay that exceeded one and one-half times the applicable minimum wage (which is $12.38 per hour) during the relevant time periods, and Plaintiffs each received total earnings in the relevant years more than half of which were made up of commissions. Defs.' Mem. at 5–8; Defs.' LR 56.1 Stmt. ¶¶ 13–18. Plaintiffs do not contest these calculations, Pls.' Resp. Defs.' LR 56.1(a)(3) Stmt. ¶¶ 13–18, ECF No. 47, nor do they dispute that Defendants have satisfied the second and third requirements of § 207(i).

Instead, Plaintiffs focus their arguments on the first requirement: whether BOTS constitutes a "retail or service establishment." They argue it does not for three reasons. First, Plaintiffs contend that they worked regular hours, which precludes BOTS from being categorized as a "retail or service establishment." Pls.' Mem. Opp. Summ. J. 7–10, ECF No. 49. Second, Plaintiffs direct the Court to guidance from the Department of Labor ("Department") stating that a travel agency lacks a "retail concept." *Id.* at 10 (citing 29 C.F.R. § 779.317). Reasoning that BOTS's business is "functionally no different from that of a travel agent," Plaintiffs argue that BOTS— like a travel agency—is not a retail establishment. *Id.* at 11. Finally, Plaintiffs argue that BOTS's purported policy of not selling tickets to

African-Americans demonstrates that its business was not open to the general public, another necessary element for a retail establishment under Department regulations. *Id.* at 11–12 (citing 29 C.F.R. § 779.319). The Court will address each of these arguments in turn.

## I. Plaintiffs' Regular Work Hours

Plaintiffs first argue BOTS did not require irregular hours, which they contend is a necessary prerequisite to classifying BOTS as a retail establishment. In support, they rely primarily on the Seventh Circuit's decision in *Alvarado v. Corporate Cleaning Services, Inc.*, 782 F.3d 365 (7th Cir. 2015). *Alvarado* concerned window washers who, like Plaintiffs, sought overtime pay under the FLSA from their employer, which specialized in window-washing services for high-rise commercial and apartment buildings. *Id.* at 366. The employer, like BOTS, asserted it should be exempt under § 207(i). *Id.* The window washers disagreed, arguing that they were not paid on a commission basis and that their employer was not a retail or service establishment. *Id.*

The Seventh Circuit first concluded that the window washers were paid on a commission basis. *Id.* at 367–69. In reaching this determination, the court analyzed the window washers' compensation structure, finding that "the window washers [were] paid only if there's been a sale," which constituted a commission system. *Id.* at 367. The court then noted the "more important consideration . . . that commission-compensated work involves irregular hours of work." *Id.* at 368. This consideration is important, the court explained, because it underlies the

rationale for the FLSA's exemption for commission workers in § 207(i): to avoid a windfall for workers whose hours are irregular but generally equivalent to those worked by non-commission workers. *Id.* at 369. To that end, the court explained that the window washers worked irregular hours due to the nature of their business, which was dependent on weather, light, and other environmental factors. *Id.* at 368–69. But if the window washers were to receive overtime pay during the peak of their irregular hours, the court reasoned, they would receive a windfall as compared to non-commission workers that worked an equivalent number of hours on a regular basis. *Id.* at 369. The court therefore found the workers were paid on a commission basis. *Id.*

As such, the Seventh Circuit's discussion of irregular hours was in the context of deciding whether the pay was commission-based. The Seventh Circuit then moved on to consider whether the employer was a retail or service establishment. *Id.* at 369. For various reasons that the Court discusses in more detail below, the Seventh Circuit found that the window-washing company was. *Id.* at 369–72. But nowhere in this discussion did the court link the working of regular hours to classification of the employer as a retail or service establishment.[4]

Furthermore, as Defendants point out, there are numerous retail or service industries that compensate salespersons on a commission basis, yet still require

---

[4] The court did note at one juncture, in criticizing an amicus curiae brief filed by the Department, that "[n]owhere does the Department engage with the primary reason for treating [the defendant's] window washers as commission workers—their irregular hours." *Id.* at 371. But this reference by its terms relates only to the exemption's requirement of commission-based pay, and in any event, it was part of a broader critique that the Department's regulations are divorced from § 207(i)'s underlying purposes. *Id.*

8

them to maintain regular hours, including department stores, beauty shops, jewelry stores, and clothing stores.  In fact, the *Alvarado* court specifically referenced a shoe salesman, who is paid per pair of shoes he sells, as an example of someone who works on a commission basis.  *Id.* at 367.  Therefore, requiring employees to work irregular hours is not a necessary prerequisite to finding that an employer is a retail or service establishment under § 207(i).

## II.    "Retail Concept" Establishments

Plaintiffs next argue that BOTS cannot constitute a retail establishment because it is akin to a travel agency, which the Department has indicated lacks a "retail concept."  This argument arises from regulations that the Department has promulgated in relation to § 207(i).  One such regulation provides a "[p]artial list of establishments lacking [a] 'retail concept.'"  29 C.F.R. § 779.317.[5]  The list includes a series of different establishments, from armored car companies to detective agencies to wrecking contractors; it also includes travel agencies.  *Id.* § 779.317.  Plaintiffs argue that, because BOTS's employees speak with customers by phone, find tickets for them, and purchase tickets on their behalf, they are equivalent to travel agents who work at travel agencies.  Thus, at least according to Plaintiffs, BOTS cannot be a retail establishment under § 207(i).

This argument is faulty for two reasons.  First, the Seventh Circuit in *Alvarado* severely questioned the persuasive value of the Department's list of industries in § 779.317.  In holding that the window-washing company was a "retail

---

[5]    In the preceding regulation, the Department states that a retail establishment must possess a "retail concept," but does not define the term.  *Id.* § 779.316.

service establishment," the court explained that the company "sells its window-cleaning services to building owners and managers; they are the ultimate customers; they do not resell the window cleaning, and therefore [the company] is not a wholesaler." *Alvarado*, 782 F.3d at 369. Thus, the court focused on the distinction between retailers and wholesalers to define what constitutes a "retail establishment" for the purposes of § 207(i). *Id.* at 369–70. The court also found it significant that, by offering window washing by the building, the company used "the unit of sale recognized in the industry," rather than bundling smaller units and selling them wholesale. *Id.* at 370. In the eyes of the court, the Department failed to consider either of these factors or the general purposes of § 207(i) when compiling the list contained in § 779.317. *Id.* at 370–71. Thus, the *Alvarado* court found the list to be an "incomplete, arbitrary, and essentially mindless catalog," and the term "retail concept" an undefined, unilluminating phrase. *Id.*[6]

Consistent with the approach in *Alvarado*, the Court too will focus on whether BOTS acted as a retailer—as opposed to a wholesaler—within the ticket resale market. Here, Plaintiffs acknowledge in their statement of facts that BOTS sold tickets directly to end user customers, Pls.' LR 56.1(b)(3)(C) ¶¶ 2, 22–24, and

---

[6] The Seventh Circuit did not discuss whether the Department's list and other regulations in interpreting § 207(i) should be given deference under *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), or *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944). The implication of the court's reasoning, however, is that the Department's list is arbitrary and capricious and thus is not entitled to *Chevron* deference. Other courts have reached the same conclusion regarding the Department's inclusion of travel agency in its partial list of non-retail establishments. *Reich v. Cruises Only, Inc.*, No. 95-660-CIV-ORL-19, 1997 WL 1507504, at *5 (M.D. Fla. June 5, 1997); *see also Rodriguez v. Home Heroes*, LLC, No. 8:13-CV-2711-T-26AEP, 2015 WL 668009, at *6 n.54 (M.D. Fla. Feb. 17, 2015) (collecting cases).

10

they do not suggest that BOTS's customers purchased tickets in order to resell them. Nor have Plaintiffs suggested that BOTS, by selling individual tickets to individual events, dealt in units that are not recognized in the retail ticket sales industry. Based upon these undisputed market characteristics, the Court finds that BOTS qualifies as a retail establishment under the reasoning in *Alvarado*.[7]

## III. Openness to the General Public

Plaintiffs' final argument is that BOTS allegedly refused to sell tickets to African-Americans and, thus, was not open to the general public as required by Department regulations during the period in which Plaintiffs were employed. Section 779.318(a) states, in part, that "[t]ypically a retail or service establishment is one which sells goods or services to the general public," 29 C.F.R. § 779.318(a), while § 779.319 proves that "an establishment . . . will not be considered a retail or service establishment . . . if it is not ordinarily available to the general consuming public," *id.* § 779.319. Relying on these provisions, Plaintiffs maintain that being open to the general public "requires a company to service *all* customers that seek to pay them for their service." Pls.' Mem. Opp. at 12. According to Plaintiffs, because BOTS refused to sell to African-Americans, it was not open to the general public.

---

[7] *Alvarado* also noted various other purposes animating the FLSA's overtime requirements. These include "spread[ing] out full-time work among different employees," "reduc[ing] workplace injuries stemming from fatigue," and providing more pay for low-wage workers. 782 F.3d at 371. Insofar as these purposes are relevant to defining a "retail establishment," there is no reason to think BOTS should not be classified as a retail establishment. There is no indication from the record that BOTS provided an unsafe work environment or that Plaintiffs received low wages. And while Plaintiffs maintain that they regularly worked over 45 hours a week, Pls.' LR 56.1(b)(3)(C) ¶ 17, this alone is not reason enough to refuse to classify BOTS as a retail establishment.

This argument has some superficial appeal. A charge that a company engages in blatantly discriminatory practices is serious indeed. And if BOTS did discriminate against African-American customers, such reprehensible conduct is actionable under any number of federal and state statutes. *E.g.*, 42 U.S.C. § 1981; 775 Ill. Comp. Stat. 5/5-102. But the alleged misconduct has little to do with whether BOTS, as a business, was a retail establishment under § 207(i) for the purposes of the FLSA.

As an initial matter, the Seventh Circuit in *Alvarado* specifically questioned the Department's rationale for promulgating 29 C.F.R § 779.318, noting that "[w]e don't see the connection between these criteria and the reasons for excusing certain employers from the overtime provision of the [FLSA]." *Alvarado*, 782 F.3d at 371. Furthermore, the fact that BOTS may have excluded (illegally or not) a certain segment of the retail market does not preclude a finding that BOTS acted generally as a retail establishment in the ticket resale market. *See id.* (noting that "many retailers sell to narrow segments of the public: think of sellers of hospital supplies, or of judges' robes, or of body bags"). After all, if BOTS did refuse to sell tickets to African-Americans, it was acting in its capacity as a ticket retailer in doing so. Plaintiffs fail to explain how such conduct would automatically transform BOTS from a ticket retailer into a wholesaler.

In the end, while barring discrimination based on race is an important goal of many federal and state statutes, it is not the purpose behind the enactment of the FLSA or the retail establishment exemption under § 207(i). Accordingly, Plaintiffs'

argument that BOTS cannot be a retail establishment under 207(i) because it allegedly refused to sell tickets to African-American retail customers has no force.

## Conclusion

For the foregoing reasons, Defendants have demonstrated that all three conditions for the § 207(i) exemption have been met. Their motion for partial summary judgment [40] is therefore granted.

**IT IS SO ORDERED.**                    **ENTERED    3/28/17**

_____
**John Z. Lee**
**United States District Judge**